## HAIR *vs.* BLEASE.

A laborer employed to make a crop in the year 1871, under a verbal contract to allow him a certain share of the crop as compensation for his services, was not entitled to a lien on the crop,—the Act of 1869, the only law then existing on the subject, providing that the contract should be reduced to writing.

BEFORE MOSES, J., AT NEWBERRY, JULY, 1875.

The case on which the appeal was heard is contained in the following statement agreed on by counsel:

"I. On the 20th day of March, A. D. 1871, the defendant, James H. Blease, rented a parcel of land from the plaintiff, J. S. Hair,

and bargained with the plaintiff for plantation supplies necessary to the cultivation of the same; and to carry out the purposes of such agreements, they executed their instrument of writing, reciting the amount of land to be rented, the amount of cotton to be paid for such rent, and the amount of supplies to be furnished by the plaintiff, and giving to the plaintiff a lien on all the crops raised on the land for that year to secure both the rent money and the value of agricultural supplies, which agreement and lien was recorded in the office of the Register of Mesne Conveyances for Newberry County on the 21st day of March, 1871.

" II. The amount of cotton to be paid for that rent was 3,200 pounds of lint cotton, and the supplies to be advanced by Hair were to amount in value to $400.

" III. Blease farmed the said land for that year and received supplies from Hair to the value of four hundred and forty dollars ($440).

" IV. Blease delivered to Hair, in the month of November of the same year, 2,762 pounds of cotton, in six bales, which Hair applied to the payment of rent.

" V. Blease further delivered to Hair, on or about the 2d day of December, 1871, 2,253 pounds of cotton, packed in five bales; and a few days afterwards the further amount of 468 pounds of cotton, packed in one bale. These amounts of cotton, aggregating 5,493 pounds, constituted the whole cotton crop raised by Blease for that year.

" V. Hair stored the lot of five bales just mentioned at Newberry Court House.

" VII. The defendant, McGrath, aided by his family, was the only laborer and farm hand of Blease during the year 1871, under a verbal contract, by which he was to receive one-third of the crop raised on the place, in which is embraced the twelve bales of cotton hereinbefore mentioned.

" VIII. After the storing of cotton by Hair, McGrath instituted a proceeding in the Trial Justice's Court for the recovery of his share of the crop grown by Blease, in which proceeding Blease was the only defendant.

" IX. The Trial Justice had the cotton stored by Hair attached by the Sheriff, to abide the events of McGrath's suit; gave a judgment in McGrath's favor for eighteen hundred and thirty-one (1,831) pounds of cotton, less the sum of one hundred and eleven

dollars and eighty-five cents, ($111.85,) and ordered satisfaction of the same out of the cotton so stored and attached.

"X. Thereupon Hair instituted this action for the purpose of enjoining the sale of the cotton under the Trial Justice's judgment, for the purpose of enforcing his lien for agricultural supplies against the five bales of cotton in store, to the exclusion of McGrath's claim, for the purpose of having an accounting between Blease and McGrath, so as to ascertain what was really due McGrath, for judgment against Blease for the sum of four hundred and thirty-six dollars, ($436,) and for general relief in the premises.

"XI. The defendant, Blease, admitted in his answer the contract with Hair above described, the verbal contract with McGrath, and the delivery of cotton to Hair, and contented himself with denying fraud or collusion with McGrath.

"XII. The defendant McGrath's answer was of the same character, and insisted upon the propriety of the judgment rendered in his favor by the Trial Justice and the superiority of his claim as laborer over that of the plaintiff, Hair.

"XIII. By an order of Judge M. Moses, in 1872, the five bales of cotton in store were sold by the Sheriff and the funds derived from such sale held for the further order of the Court. And subsequently that fund, less Sheriff's costs and fees, was ordered to be paid over by the Sheriff to all the attorneys in this action, jointly, who were ordered to deposit it in bank, to await the determination of the cause.

"XIV. No further orders were passed in this action until that of 29th May, 1874, which only provided that it be referred to Ira B. Jones, Esq., as Special Referee, 'to ascertain and report the state of accounts between the plaintiff John S. Hair and the defendant James H. Blease, and between the defendants James H. Blease and Bejamin McGrath,' and to report by the next term of the Court.

"XV. Under that order the Referee, after taking testimony, (which is filed with this report,) filed his report on 30th March, 1875.

"XVI. This report found that McGrath was entitled to 1,831 pounds of cotton in the crop; that McGrath was indebted to Blease in the sum of one hundred and ninety-four dollars and forty-five cents, ($194.45,) which was to be taken out of McGrath's share of

cotton; that Blease was indebted to Hair; if Hair be allowed to retain all the cotton, in the sum of fifty-seven 36-100 dollars, ($57.36,) and, if McGrath's claim have preference, in the sum of one hundred and sixty-eight 45-100 dollars ($168.45,) together with the balance of cotton left after satisfying McGrath.

"XVII. The account of Blease against McGrath was proved by Blease, who was the witness presented by Messrs. Baxter & Johnstone, the attorneys for both of the defendants, and was not contradicted by McGrath or by any other witness, or by any testimony.

"XVIII. The Referee did not undertake to determine how the proceeds of the sale of cotton should be distributed, but confined himself to a statement of the above accounts and the suggestions that, upon the determination of the preference to be allowed to Hair or to McGrath, different sums would be found due them respectively, and he made no recommendation as to the amount that should be allowed to either of them out of the fund, nor in regard to costs.

"XIX. No exceptions to the report were ever made or filed by McGrath or his attorneys.

"XX. When the cause was called on the calendar at the July Term of the Court of Common Pleas, the attorneys for Hair moved to have the report confirmed, with the exception of correcting an error in the price of cotton, which operated in McGrath's favor, to which correction no objection was made.

"XXI. A verbal motion was made by McGrath's attorneys to recommit the report unless the item of fifty dollars allowed in the report in Blease's account against McGrath for firewood and use of mules should be struck out.

"XXII. Thus the matter submitted to the Judge was the question whether the report of the Referee, to be corrected as proposed by the plaintiff, should be confirmed or recommitted.

"There was no argument on the question of the relative rank of the claims of Hair and McGrath respectively; there was no testimony offered before the Court; there was no charge made against the Referee; there was no allegation of evidence discovered since the hearing by the Referee.

"XXIII. In this state of the cause the Circuit Judge undertook to dispose of the whole case in all its issues, and decreed: That the item of fifty dollars above mentioned be stricken out of Blease's

account against McGrath as unreasonable, 'because it would be unjust and unprecedented in the history of contracts for labor for a part of the crop to charge the laborer for firewood and for the hire of mules to haul it;' that McGrath have judgment against Hair for the sum of two hundred and thirty and 90-100 dollars ($230.90) and interest from 1st January, 1872, amounting in the whole to $290.40, with a lien on the fund derived from the sale of the said five bales; that Hair pay all the costs of the suit, because, as the decree alleges, 'the litigation has impressed the Court as uncalled-for and vexatious;' and that Hair have 462 pounds of the cotton applied to his demand against Blease and judgment against Blease for such sum of money as may after that be found due him from Blease,—thus disposing of the whole case upon motions to confirm or recommit the report upon accounts between the parties.

"XXIV. The cause was never noticed for trial by either of the defendants, but by the plaintiff."

The plaintiff appealed.

*Moorman & Schumpert, Suber & Caldwell*, for appellant.

*Baxter & Johnstone*, contra.

July 25, 1876.   The opinion of the Court was delivered by

WRIGHT, A. J.   On the 20th day of March, 1871, James Blease, one of the respondents in this case, rented a parcel of land from John L. Hair, appellant, for planting purposes, for which he agreed to pay 3,200 pounds of lint cotton.   By the terms of the agreement Hair was also to advance to Blease supplies amounting in value to $400, which were furnished to the extent of $440.

The terms of the contract were reduced to writing, and fully expressed in an instrument duly recorded in the office of the Registrar of Mesne Conveyance for Newberry County, on 21st of March, 1871.   For the rent and the supplies to be advanced it gave to Hair a lien on all the crops raised on the land for that year.   Blease delivered to Hair more than enough cotton to pay the rent, and he also had in his hands five bales stored at Newberry Court House which he had received from Blease on account of their contract. It further appears that the whole of the crop raised on the land so rented for the said year was through the labor of one McGrath,

aided by his family.  He had been hired by Blease under a verbal
contract, by which he was to receive for his services one-third of
the whole crop raised.  After the storing of the crop by Hair,
McGrath instituted suit against Blease before a Trial Justice for a
recovery of his share of the crop.  The Trial Justice attached the
cotton stored by Hair to abide the event of McGrath's suit, gave
judgment for a certain amount against Blease, and ordered satisfac-
tion made out of the cotton so stored.

Thereupon Hair instituted this action to enjoin the sale made
under the process of the Trial Justice, and for the enforcement of
his lien for agricultural supplies against the said cotton, to the ex-
clusion of McGrath's claim, for an account between Blease and
McGrath, and for general relief.  The five bales of cotton were
ordered by the Circuit Judge to be sold and the proceeds deposited
in bank to await the determination of the cause.  An order was
made referring the case to a Referee to ascertain the accounts be-
tween the parties, and a report was filed on the testimony heard
before him.  As, in the view of the Court, the material question to
be determined is the priority of the respective liens asserted on the
one hand by McGrath and on the other by Hair, it is entirely use-
less to pass now upon the state of the accounts referred to in the
report, except to affirm the ruling of the Circuit Judge as to the
rejection of the items in the account of Blease against McGrath
for the firewood and use of mule to haul it and to sustain the ex-
ception of the appellant's counsel to the allowance of interest on
the debt due to McGrath.  As the cotton was sold by the order of
the Court, no interest could accrue on the judgment when the
property out of which it was to be paid was, in compliance with the
order, converted into money, held subject to the disposition to be
finally made of the cause.  The decision of the material question
between the parties is to be made alone in reference to the existing
law as it stood in 1871 in reference to the subject matter, for the
respective contracts were made in that year.

By the Act of 1866, (15 Statutes at Large, 380,) "persons
making advance or advances in money or supplies to any person or
persons engaged, or about to engage, in cultivating the soil shall be
entitled to a lien on the crop which may be made during the year
upon the lands in the cultivation of which the advances so made
have been expended in preference to all other liens, existing or
otherwise, to the extent of such advance or advances, provided an

agreement in writing shall be entered into before any such advance is made to this effect, in which shall be specified the amount to be advanced, or in which a limit shall be fixed beyond which the advances, if made from time to time, shall not go, which agreement shall be recorded in the office of the Register of Mesne Conveyance in the District in which the person to whom the advances are made resides within thirty days from its date."

By the Act of 1869, (14 Statutes at Large, 227,) "all contracts made between owners of land, their agents or administrators or executors, and laborers shall be witnessed before one or more disinterested persons, and, at the request of either party, be duly executed before a Justice of the Peace or Magistrate, whose duty it shall be to read and explain the same to the parties. Such contracts shall clearly set forth conditions upon which the laborer or laborers engaged to work, embracing the length of time, the amount of money to be paid, and when; and if it be on shares of crops, what portion of the crop or crops." The third Section provides: "That whenever laborers are working on shares of crops, or for wages in money or other valuable consideration, they shall have a prior lien upon said crop or crops in whosesoever hands it may be. Such portion of the crop or crops to them belonging, or such amount of money or other valuable consideration due, shall be recoverable by an action in any Court of competent jurisdiction."

The sixth Section repeals all Acts and parts of Acts in any way conflicting with such Act.

These were the only Acts of force in 1871 in regard to the advance for the cultivation of crops or providing, by way of lien, for the security of laborers. The Acts are incorporated in the General Statutes; but as these were not adopted until February 10, 1872, they are to be regarded as existing at the time of their passage without modification and unaffected by any after provision in relation to them. We are spared the necessity of deciding on the preference of liens under the Acts between the parties supplying the advances for agricultural labor and the laborers themselves where the requisitions of the Acts have been fully complied with.

If their conditions had been strictly followed by each of the parties now asserting a priority it would have presented a question not easily solvable and certainly requiring on the part of the Court a very minute and nice examination to ascertain whether the Legislature intended by the Act of 1866 to extend the lien in favor of

the party advancing the money or supplies beyond the interest or share which the person " engaged or about to engage in the cultivation of the soil," the recipient of such advances, might have in the crop which may be made during the year. It is clear that the Act of 1869 referred to, and was intended to apply to and protect, by the preference under its third Section, only such contracts as were contemplated by its first Section. These, manifestly, were to be in writing, and it is impossible, looking to the language, to reach any other conclusion. They are to be " witnessed by one or more dis- interested persons, and, at the request of either party, be duly exe- cuted before a Justice of the Peace or Magistrate, whose duty it shall be to read and explain the same to the parties. Such con- tract shall clearly set forth the conditions upon which the laborer or laborers engaged to work, embracing the length of time, the amount of money to be paid and when; and if it be on shares of crops, what portion of the crop or crops."

The requirement of their execution before a Justice of the Peace or Magistrate, when required by either party, necessarily implies the reduction of their terms to writing, and this is the more appa- rent from the requisition that they shall be read and explained by him, and the further fact that the conditions are to be clearly set forth in the contract. Where a statute divests a right it must be strictly construed, and the party claiming its benefit must bring himself within all the terms and conditions, through which an ad- vantage, to the prejudice of another, is to be enjoyed by him.

It would thus seem that McGrath is not in a position to demand, under the Act of 1869, a preference of lien accorded to Hair by the Act of 1866. The loss of his labor is a matter to be regretted, but it is referable to his omission to comply with the provisions of the statute, which required his contract to be in writing before he could avail himself of its benefit.

The order made by the Circuit Court is set aside, and the case remanded to it, that any balance due Hair by Blease for supplies may be ascertained, and so much of the proceeds of the cotton first applied to it, and the remainder, if any, to the account, to be ascer- tained, between McGrath and Blease, the item of firewood, &c., to be disallowed in the discount offered by Blease against McGrath. Blease must pay all the costs, including those of McGrath.

*Moses,* C. J., and *Willard,* A. J., concurred.